**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

JUAN MARIN,

*Plaintiff,* **CASE NO.:**

v.

TUFF SHED, INC.,

*Defendant.*

_______________________________________/

# COMPLAINT

1. Plaintiff Juan Marin worked for Defendant Tuff Shed as an installer. He principally built sheds for Home Deport customers.
2. Throughout his employment, Tuff Shed misclassified Marin as an independent contractor while controlling him like an employee.
3. Marin repeatedly questioned his classification as an independent contractor. Often, when he did so, Tuff Shed would retaliate against him by taking him off the schedule.
4. Also, throughout his employment, Tuff Shed frequently would dock Marin's pay for issues that had nothing to do with his workmanship.
5. For instance, if a customer complained about damaged building materials (which damage was not Marin's fault), Tuff Shed would dock Marin's pay.
6. If a customer was unhappy with the end product (i.e. it was not what they felt Tuff Shed had originally promised), Tuff Shed would dock Marin's pay.
7. In some instances, Tuff Shed would attempt to justify docking Marin's pay by falsely claiming that his work had failed local building code inspections.

8. Tuff Shed agents and employees spread these false representations among Marin's colleagues, co-workers and supervisors, thereby harming his reputation.
9. Ultimately, after Marin had complained about these various business practices one too many times, Tuff Shed fired him.
10. This is an action for unpaid wages in violation of the Fair Labor Standards Act ("FLSA"), retaliation in violation of the FLSA, fraud and defamation.

**PARTIES, JURISDICTION AND VENUE**

11. Plaintiff was a citizen of Polk County, Florida at all times relevant to this Complaint.
12. Plaintiff was an employee of Defendant within the meaning of 29 U.S.C. § 203(e).
13. Defendant is a Colorado for-profit corporation with its principal place of business in Denver, Colorado. Tuff Shed conducts business throughout the United States including substantial business within this the State of Florida and this District.
14. Defendant was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d), was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203, and grossed more than $500,000 per annum at all times relevant.
15. At all times material, Defendant maintained control, oversight, and discretion over Plaintiff in his capacity as an employee of Tuff Shed, Inc., and the terms and conditions of his work, including the power to set schedules, assign work, determine compensation, and impose deductions that harmed Plaintiff.
16. This Court has subject matter jurisdiction over claims arising under 29 U.S.C. § 201. 28 U.S.C. § 1331.
17. This Court has supplemental jurisdiction over Plaintiff's common law claims as they are so closely related to their FLSA claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over Defendant because Defendant continuously conducts significant business in this District.

19. Venue is proper because Defendant is subject to personal jurisdiction in this District and because certain of the acts giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b). Plaintiff performed work for Defendant in this District and Defendant's personnel within this District participated in the conduct at issue in this case.

## GENERAL ALLEGATIONS

20. Tuff Shed, Inc. is in the business of manufacturing sheds, garages, storage buildings and related products. It also provides installation services related to its products for its customers. Tuff Shed performs a significant amount of work for Home Depot.

21. Defendant hired Plaintiff as an Installer in March 2018, where he installed Tuff Shed products for residential and commercial customers.

22. Although Defendant labeled him an "independent contractor", Defendant controlled:

a. Job assignments and scheduling;

b. Pricing and payment amounts per project;

c. Inspection procedures;

d. Mandated documentation uploads of photographs showing progress of construction, mandatory job board updates, as well as calls and text messages with Tuff Shed management every day for updates on progress;

e. Mandated background checks and Home Depot credentialing on every assignment for Plaintiff and any assistant installers who helped him perform his work;

f. Mandated meetings regarding the method and manner regarding the construction of Tuff Shed products.

23. If Plaintiff declined individual jobs, especially due to pricing, distance, or scope, it would result in fewer assignments or removal from future scheduling.

24. Defendant's marketing materials represented that its installations are backed by corporate oversight.

25. At least once per week throughout Plaintiff's employment, Defendant engaged in a scheme where it maintained authority to deduct compensation through "chargebacks" where it reduced the amount paid to Plaintiff from what was previously agreed to under the guise that Plaintiff committed errors in the installation or damages. If a customer was upset with a job that Plaintiff completed correctly, Defendant would offer discounts to the customer at Plaintiff's expense. Similarly, if Defendant provided Plaintiff with incorrect or damaged materials that led to customer complaints, Defendant would charge the cost to Plaintiff from the agreed upon pay for his project.

26. In June 2018, Plaintiff requested a transfer to a different location due to irregularities in payment that he received while working at Tuff Shed's Miami location. In response, Christopher Diparne, General Manager of Tuff Shed Miami and Fort Lauderdale, incorrectly accused him of improper installation, demanded him to fix projects that were incorrectly installed and threatened to take him off the schedule.

27. In September 2018, Plaintiff sent a written complaint regarding Defendant's payment practices, specifically that it was incorrectly paying him and deducting from the agreed upon price for projects. However, nothing changed.

28. Throughout Plaintiff's employment, Defendant frequently told Marin, his colleagues, and his superiors that Marin's projects failed municipal inspections. Defendant did this to force Marin to return job sites and perform labor without additional payment or face termination. However, these were false misrepresentations that Defendant made to induce Plaintiff into performing free additional labor.

29. For example, on November 21, 2025, Brianna Millan, Scheduling Coordinator e-mailed Plaintiff and notified him that it would impose chargebacks against Plaintiff due to alleged workmanship errors, inspection fees and failed municipal inspections with Defendant's management copied on the-email. Defendant circulated this falsehood throughout the personnel involved with that particular project. However, the work performed did not actually fail inspection.

30. Defendant would not return the wages owed to Plaintiff, even when he provided proof that his work did not fail municipal inspections.

31. Defendant either knew the statements were false or acted in reckless disregard of the truth.

32. Plaintiff's workweeks for Defendant typically included: multi-day installations, unpaid mandatory revisits to perform extra work and travel time between job sites.

33. Defendant paid Plaintiff on a per-job basis and did not pay overtime premiums for hours worked in excess of forty (40) per week. On average, Plaintiff worked approximately sixty hours per week.

34. Throughout Plaintiff's employment, Tuff Shed was fully aware that Plaintiff was instructed to and worked for more than 40 hours per week on Tuff Shed's behalf.

35. Defendant's failure to pay overtime was willful.

36. In December 2025, Plaintiff complained to Marwin Martinez, Operations Manager, that

a. he was being misclassified as an independent contractor when he was an employee;

b. Defendant was not paying him overtime;

c. Wage deductions and chargebacks were improper.

37. Following his complaint to Mr. Martinez, Martinez advised Plaintiff that Defendant was going to make a $585 chargeback assessment against him for a door that was scratched before Plaintiff installed it. Plaintiff complained to Martinez regarding the unfair chargeback due to an incorrect assignment of fault, Defendant providing him with the wrong product, and refusing to pay him appropriately for the work he completed.

38. Shortly after Plaintiff raised his wage and misclassification complaints to Defendant, he was terminated on or about December 11, 2025, by removing all of his pending and active jobs from the schedule.

39. Defendant intentionally falsified Plaintiff's pay records and did not otherwise properly log his hours to avoid paying him not only overtime, but also his regular pay.

40. Plaintiff was required to return and perform additional work without pay based on Defendant's false representations.

**COUNT I**
**<u>VIOLATION OF THE FLSA- OVERTIME</u>**

41. Plaintiff repeats and realleges paragraphs 1–18, 20-26 as if fully set forth herein.

42. Plaintiff regularly worked for Tuff Shed in excess of forty (40) hours per workweek.

43. Although Plaintiff signed an Independent Contractor Agreement, under the economic realities test he was an employee within the meaning of the FLSA.

44. Plaintiff did not qualify as an executive, administrative, outside sales employee, or any other category of exempt employee under 29 U.S.C. § 213.

45. Plaintiff's work installing sheds directly affected interstate commerce.

46. Tuff Shed failed to make, keep, and preserve accurate records of Plaintiff's hours worked each workday and each workweek as required by 29 U.S.C. § 211(c).

47. The FLSA requires covered employers to compensate non-exempt employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) per workweek.

48. Tuff Shed paid Plaintiff on a per-job basis and did not pay overtime compensation for hours worked over forty (40) per week.

49. As a result, Plaintiff is entitled to recover unpaid overtime compensation, liquidated damages, and attorneys' fees pursuant to 29 U.S.C. § 216(b).

50. Tuff Shed's conduct was willful. Tuff Shed knew or showed reckless disregard for whether its compensation practices violated the FLSA.

51. Due to these unlawful acts, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT II
## VIOLATION OF THE FLSA- RETALIATION

52. Plaintiff repeats and realleges paragraphs 1–11, 15, 27-32 as if fully set forth herein.

53. Plaintiff engaged in protected activity under the FLSA by complaining to Tuff Shed management that:

    a. He was being misclassified as an independent contractor;

    b. He was not being paid overtime wages;

    c. Wage deductions and chargebacks were improper.

54. Plaintiff's complaints were clear, detailed, and sufficiently specific to inform Tuff Shed that he was asserting rights protected by the FLSA.

55. Tuff Shed understood Plaintiff's complaints to be assertions of statutory wage rights.

56. In direct response to Plaintiff's complaints:

    a. Tuff Shed removed him from the work schedule;

    b. Imposed deductions and chargebacks;

    c. Ultimately terminated his working relationship.

57. These actions constitute adverse employment actions under 29 U.S.C. § 215(a)(3).

58. The adverse actions were causally connected to Plaintiff's protected activity.

59. At the time of termination, Plaintiff was performing his job satisfactorily.

60. Tuff Shed's conduct was intentional and retaliatory.

61. As a direct result of Defendant's retaliation, Plaintiff suffered lost wages, lost future earning capacity, emotional distress, and other damages to be proven at trial.

62. Plaintiff is entitled to all remedies available under the FLSA, including back pay, front pay, liquidated damages, and attorneys' fees.

**COUNT III**
**<u>FRAUD</u>**

63. Plaintiff repeats and realleges paragraphs 1–4, 9-11, 20-23 as if fully set forth herein.

64. On multiple occasions throughout Plaintiff's employment, Tuff Shed falsely represented that specific installations done by Plaintiff "failed" municipal inspections and required him to perform immediate corrective work.

65. Defendant used these statements in order to get Plaintiff to return to job sites and complete additional labor without compensation.

66. Defendant knew that these statements were false when they were made or made them with reckless disregard for their truth, including when municipal inspections showed that Plaintiff's installations had passed.

67. These statements were intended and in fact did induce Plaintiff's reliance upon them.

68. Plaintiff justifiably relied on Defendant's false statements regarding the failed inspections and would complete additional free labor.

69. As a direct and proximate result of Defendant's misrepresentations, Plaintiff has been damaged as a result in an amount to be determined at trial.

**COUNT IV**
**DEFAMATION *PER SE***

62. Plaintiff repeats and realleges paragraphs 1-4, 9-11, 20-23 as if fully set forth herein.

63. Tuff Shed repeatedly represented to Martin's colleagues, coworkers, and supervisions that he had poor workmanship that failed to pass municipal inspection. These statements were false.

64. Tuff Shed knew that these statements were false when publishing them.

65. Tuff Shed's false statements about Marin's repeated poor workmanship and failed inspections constitute defamation *per se* because on their face they impute to Marin characteristics that are incompatible with his lawful trade and profession and harm him in his business reputation.

65. At the time the statements were made, Tuff Shed knew or should have known that such statements would cause severe damage to Marin's personal and professional business opportunities, his career, and ultimately his ability to earn a living.

66. Tuff Shed made these statements with actual malice because it knew of the statements' falsity or made the statements with reckless disregard for their truth or falsity.

67. Tuff Shed made these statements with actual malice in that the statements were part of Tuff Shed's scheme to extract free labor from Plaintiff under the guise of failed inspections.

67. In making the defamatory statements, Tuff Shed acted intentionally, maliciously, willfully, and with the intent to injure Marin.

69. Tuff Shed's conduct was unreasonable and outrageous, exceeds the bounds tolerated by decent society, and was done willfully, maliciously, and deliberately to cause Marin harm.

70. As a result of Tuff Shed's defamatory statements, Plaintiff is entitled to presumed damages and punitive damages in an amount to be determined at trial.

**COUNT V**
**DEFAMATION PER QUOD**
**(IN THE ALTERNATIVE TO COUNT IV)**

63. Plaintiff repeats and realleges paragraphs 1-4, 9-11, 20-23 as if fully set forth herein.

64. Tuff Shed repeatedly represented to Martin's colleagues, coworkers, and supervisions that he had poor workmanship that failed to pass municipal inspections. These statements were false.

66. Tuff Shed knew that these statements were false when publishing them.

66. At the time the statements were made, Tuff Shed knew or should have known that such statements would cause severe damage to Marin's personal and professional business opportunities, his career, and ultimately his ability to earn a living.

68. Tuff Shed made these statements with actual malice because it knew of the statements' falsity or made the statements with reckless disregard for their truth or falsity.

69. Tuff Shed made these statements with actual malice in that the statements were part of Tuff Shed's scheme to extract free labor from Plaintiff under the guise of failed inspections.

68. In making the defamatory statements, Tuff Shed acted intentionally, maliciously, willfully, and with the intent to injure Marin.

68. Marin has been harmed by the diminished value of the goodwill he built in his community and harm to his reputation as an installer and craftsman. Marin has also suffered economic damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff seeks the following relief:

a. Unpaid overtime wages under the FLSA;
b. Liquidated damages under the FLSA;
c. Economic damages flowing unlawful retaliation in violation of the FLSA
d. Compensatory damages for unlawful retaliation in violation of the FLSA;
e. Compensatory damages for fraudulent conduct;
f. Punitive damages for fraudulent conduct;
g. Presumed damages for defamation *per se*;
h. Punitive damages for defamation *per s*e;
i. Reputational damages for defamation *per quod*;
j. Financial damages for defamation *per quod*;
k. Punitive damages for defamation *per quod*;
o. Reasonable attorneys' fees and costs;
p. Pre-judgment and post-judgment interest; and
q. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims triable.

Respectfully submitted,

By: */s/ Jonathan Pollard*

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Eric Di Giacomo
Oklahoma Bar No.: 34400
eric@pollardllc.com
*(pro hac vice forthcoming*)

**Pollard PLLC**
500 E. Broward Ave., Ste #950
Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff Juan Marin*